FILED - LN
July 30, 2010 3:50 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY /___/ SCANNED BY /___/

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

EUGENE VOLSTROMER, and
GLORIA VOLSTROMER, Individually
and on behalf of all similarly
situated Individuals,

        Plaintiffs,

v

ENBRIDGE, INC., a Delaware Corporation,
ENBRIDGE ENERGY PARTNERS, LP,
a Delaware Corporation,

Defendants.

1:10-cv-752
Gordon J Quist
US District Judge

Civil Action:
Hon.

| | |
|---|---|
| HERTZ SCHRAM PC | MACUGA, LIDDLE & DUBIN PC |
| PATRICIA STAMLER (P35905) | STEVEN LIDDLE (P45110) |
| ELIZABETH C. THOMSON (P53579) | DAVID DUBIN (P52521) |
| Attorneys for Plaintiffs | Attorneys for Plaintiffs |
| 1760 S. Telegraph Rd., Ste. 300 | 975 E. Jefferson Ave. |
| Bloomfield Hills, MI 48302 | Detroit, MI 48207 |
| 248-335-5000 | (313) 392-0015 |
| pstamler@hertzschram.com | sliddle@miclassaction.com |
| lthomson@hertzschram.com | dubin@michlassaction.com |

## CLASS ACTION COMPLAINT
## AND JURY DEMAND

      Plaintiffs by and through their attorneys Hertz Schram PC and Macuga, Liddle & Dubin PC, hereby complain against the above named Defendants, make demand for jury trial and state as follows:

### THE PARTIES

      1. Plaintiff Eugene Volstromer lives in the City of Battle Creek, County of Calhoun, State of Michigan.

2. Plaintiff Gloria Volstromer lives in the City of Battle Creek, County of Calhoun, State of Michigan. (Hereinafter Eugene Volstromer and Gloria Volstromer shall be collectively referred to as "Plaintiffs".)

3. Defendant Enbridge, Inc. is a Delaware corporation which conducts business in approximately 17 cities in Michigan, including the City of Marshall, County of Calhoun.

4. Defendant Enbridge Energy Partners LP is a Delaware corporation which conducts business in approximately 17 cities in Michigan, including the City of Marshall, County of Calhoun. (Hereinafter Enbridge, Inc. and Enbridge Energy Partners LP shall be collectively referred to as "Defendants".)

## Jurisdiction and Venue

5. This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and it is a class action brought by citizens of a State that is different from the State where the Defendants are incorporated or do business.

6. Prosecution of this action in this district is proper under 28 U.S.C. § 1391(a)(2) because all the events or omissions giving rise to the claims asserted herein occurred in this district.

## Factual Allegations

7. Defendants transport crude oil, liquid petroleum and natural gas in the Midwest, Mid-Continent and Gulf Coast regions of the United States for companies such as Marathon and other related fuel industries.

8. Defendants own, possess, manage, control and maintain a pipeline system on its "Lakehead System", which includes Line 6B, a 30-inch 190,000 barrels per day pipeline (the

2

"Pipeline") that transports light synthetics, heavy and medium crude oil from Griffith, Indiana to Sarnia, Ontario and bound for refineries located in Detroit, Toledo and Sarnia, Ontario.

9. The 1,900-mile "Lakehead System" is the U.S. portion of the world's longest petroleum pipeline and is the primary transporter of crude oil from Western Canada to the United States, which serves the major refining centers in the Great Lakes, Midwest and Ontario, Canada.

10. According to Defendants' web site, ". . .[O]n any single date (Enbridge, Inc.) is the largest single conduit of oil in the U.S."

11. On July 26, 2010, a massive oil leak erupted from the Pipeline near Defendants' pump station located at 16000 Division Drive Marshall, Michigan, causing extensive and continuing damages to Plaintiffs.

12. Based upon information and belief, after the Defendants' discovered the oil leak, they waited several hours before reporting the problem to all proper authorities.

13. As a result of the Defendants' unreasonable delay in reporting the oil leak, all necessary and proper measures to control and contain the oil leak were not timely instituted, which severely aggravated injuries and damages to waterways, air, land and wildlife including and surrounding the Kalamazoo River watershed.

14. Current reports provide that 1,000,000 gallons of oil escaped into the Talmadge Creek near the borders of Marshall and Fredonia and flowed west into the Kalamazoo River. By the afternoon of July 26, 2010 the oil slick had reached Ft. Custer State Recreation Area, between Battle Creek and Kalamazoo.

15. On the morning of July 27, 2010, local officials declared a "state of emergency", and Governor Jennifer Granholm declared the region a "disaster area."

16. Horrific fumes and odors permeate and continue to permeate the air surrounding communities, and reports of oil-soaked waterfowl and dead fish were observed in the tainted parts of the Kalamazoo River.

17. Battle Creek Vice-Mayor, Chris Simmons was quoted in the media, "There is a terrible odor hanging over the whole town."

18. Based on information presently available, the Department of Environmental Protection Agency immediately sent crews to address the cleanup effort and environmental concerns. Air quality was tested and benzene, a "Group A" known human carcinogen, was detected in the air.

19. Residents and businesses were and continue to be warned to stay away from the Kalamazoo River and not use Kalamazoo River water for livestock or crops.

20. A water advisory was issued by the Calhoun County Public Health Department instructing area residents with private wells within 200 feet from the edge of the river bank not to consume or cook with water from their home wells.

21. Residents have fled the area, evacuating their homes and property due to unbearable environmental conditions, including noxious air and the lack of suitable drinking water.

22. The oil spill will not simply evaporate off the surface of the water and caused and continues to cause dangerous environmental contamination of the Kalamazoo River and other connected waterways, drinking water, land, wildlife and vegetation.

23. The Defendants failed to exercise due care in their care, maintenance, monitoring and repair of the Pipeline so as to prevent oil leaks.

24. As a result of the Defendants' actions as set forth herein, Plaintiffs and all others similarly situated suffered significant damage to property, an interference with property rights and an interference with the right to peace and comfort.

25. There are many other potential effects from the oil spill that have not yet become known, and Plaintiffs reserve the right to amend this Complaint to more fully describe the damages once additional information becomes available.

## COUNT I - CLASS ACTION ALLEGATIONS

26. Plaintiffs restate their allegations in Paragraphs 1 through 25 as if set forth fully herein.

27. Plaintiffs bring this matter on behalf of themselves and all others similarly situated for harm suffered to personal property, harm to suffered to real property, loss of and interference with the use and enjoyment of their property rights and interference with Plaintiffs' right to peace and comfort.

28. Plaintiffs' claims are best administered by means of certification via Rule 23 of Federal Rules of Civil Procedure. The requirements of Rule 23 have plainly been satisfied:

 a. Numerosity of the class

   The proposed Class is so numerous that joinder is impractical. The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court.

 b. Predominance of Common Questions of Fact and Law

   There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

5

      i. Whether Defendants caused and/or contributed to the oil spill.

      ii. Whether Defendants actions were negligent.

      iii. Whether the oil spill has caused environmental or other damage.

      iv. Whether the oil spill has caused an interference with property rights.

      v. Whether the oil spill created noxious and offensive odors and fumes.

      vi. The amount of damages Plaintiffs and the Class Members should receive in compensation.

      vii. Whether Defendants actions were reckless and in conscious disregard of injury to the Plaintiffs and, if so, the amount of exemplary damages to be assessed.

c. <u>Typicality</u>

Plaintiffs and the Class Members have suffered similar harm as a result of Defendants' actions.

d. <u>Adequacy of Representation</u>

Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have no claims antagonistic to those of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions and environmental litigation.

e. <u>Superiority</u>

A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford individual

6

litigation, the court system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

29. The various claims asserted in the action are also certifiable under the provisions of Rules 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

   a. The prosecution of separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants.

   b. The prosecution of separate actions of individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests.

   c. The questions of law or fact common to the Members of the Class predominate over any questions affecting only individual Members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT II – NUISANCE

30. Plaintiffs restate their allegations in Paragraphs 1 through 29 as if set forth fully herein.

31. Defendants' actions have interfered with the Plaintiffs' property rights, privileges, and use and enjoyment of property so as to constitute a nuisance.

32. The events caused by the Defendants created an unreasonable, offensive and toxic odor.

33. The events caused by the Defendants created an unreasonable and wrongful release of hazardous and non-hazardous substances into the waterways, drinking water, air and land.

34. The release of toxins into the waterways, air and land has resulted in significant harm to Plaintiffs and all others similarly situated.

35. Plaintiffs did not consent to the Defendants' actions.

36. Defendants' actions as alleged herein constituted an unreasonable interference with the safety, peace, comfort and convenience of the Plaintiffs and all others similarly situated.

37. The harm caused by Defendants is a direct and natural result of Defendants' actions as herein alleged.

38. Defendants' actions were intentional and unreasonable and are otherwise actionable.

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment in its favor and those similarly situated as to Plaintiffs and against Defendants and award to Plaintiffs and all those similarly situated:

    A.    Actual Damages;

    B.    Exemplary Damages;

    C.    An order compelling Defendants to immediately and continuously take all necessary and appropriate actions as follows:

   a. Clean up, restoration, remediation of all water, air and land impacted by the oil spill and the release of oil, toxic and non-toxic substances; and

   b. Perform all necessary environmental testing of water, air and land to ensure the existence safe and sound conditions presently and in the future.

D. All other relief this Court deems just and appropriate, including but not limited to, all costs and attorneys' fees associated with bringing this action and interest from the date of the filing of this Complaint until the date of judgment at the statutory rate.

## COUNT III – NEGLIGENCE

39. Plaintiffs restate their allegations in Paragraphs 1 through 38 as if set forth fully herein.

40. Defendants owed Plaintiffs and all others similarly situated a duty to exercise reasonable conduct and to follow all applicable laws and standards and to prevent and minimize any release of oil, petroleum products, toxic and hazardous substances, odors and wastes.

41. Defendants breached their duties to Plaintiffs by failing to design, construct, maintain, inspect or monitor their facilities, procedures and equipment, including the Pipeline, thus allowing spills and releases of oil, petroleum products, toxic and hazardous substances, odors and wastes.

42. Defendants failed to take reasonable steps during and after the oil spill to avert an environmental catastrophe, thereby allowing additional spills and releases of oil, petroleum products, toxic and hazardous substances, odors and wastes.

43. Defendants failed to initiate, undertake, continue or maintain appropriate and timely measures to stop the flow of oil, to remove or remediate the oil, or to prevent the hazards

associated with the releases of oil, petroleum products, toxic and hazardous substances, odors and wastes.

44. Defendants knew or should have known that the Pipeline was operating under hazardous conditions, not in compliance with Michigan and Federal standards, therefore, causing the oil spill and noxious, dangerous, and hazardous chemicals and/or other substances to be released into waterways, drinking water, air and land.

45. Defendants also knew that the oil spill and/or other substances were noxious, dangerous, and hazardous and would have harmful effects on waterways, drinking water, air and land. Defendants' conduct in this regard was unreasonable.

46. Defendants' actions as set forth herein were voluntary.

47. Defendants' release of oil, petroleum products, toxic and hazardous substances, odors and wastes into the surrounding waterways, air and land were malicious and/or willful and demonstrate a reckless disregard of Plaintiffs' rights and the rights of those similarly situated.

48. Defendants' conduct is the proximate cause of damages to the Plaintiffs and those similarly situated.

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment in its favor of Plaintiffs and those similarly situated and against Defendants and award to Plaintiffs and all those similarly situated:

- A. Actual Damages;
- B. Exemplary Damages;
- C. An order compelling Defendants to immediately and continuously take all necessary and appropriate actions as follows:
    - a. Clean up, restoration, remediation of all water, air and land impacted by the oil spill and the release of oil, toxic and non-toxic substances; and

   b. Perform all necessary environmental testing of water, air and land to ensure the existence safe and sound conditions presently and in the future.

 D. All other relief this Court deems just and appropriate, including but not limited to, all costs and attorneys' fees associated with bringing this action and interest from the date of the filing of this Complaint until the date of judgment at the statutory rate.

<b><u>COUNT IV – TRESPASS</u></b>

49. Plaintiffs restate their allegations in Paragraphs 1 through 48 as if set forth fully herein.

50. Defendants allowed releases of oil, petroleum products, toxic and hazardous substances, odors and wastes into the waterways, air and land which then entered and settled over and on to the property of Plaintiffs and all others similarly situated.

51. The oil, petroleum products, toxic and hazardous substances, odors and wastes which entered over and settled on to Plaintiffs' property interfered with Plaintiffs' interest in the exclusive possession of property and constitute a continuing trespass.

52. Plaintiffs and all others similarly situated, did not consent for oil, petroleum products, toxic and hazardous substances, odors and wastes to physically invade their property.

53. Plaintiffs have been and continue to be damaged by Defendants' trespass onto their real property and/or exclusive possessory real property rights.

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment in its favor of Plaintiffs and those similarly situated and against Defendants and award to Plaintiffs and all those similarly situated:

 A. Actual Damages;
 B. Exemplary Damages;

    C.    An order compelling Defendants to immediately and continuously take all necessary and appropriate actions as follows:

        a.    Remediation of all water, air and land impacted by the oil spill and the release of oil, toxic and non-toxic substances; and

        b.    Perform all necessary environmental testing of water, air and land to ensure the existence safe and sound conditions presently and in the future.

    D.    All other relief this Court deems just and appropriate, including but not limited to, all costs and attorneys' fees associated with bringing this action and interest from the date of the filing of this Complaint until the date of judgment at the statutory rate.

## COUNT V – STRICT LIABILITY

54. Plaintiffs reallege paragraphs 1 through 53 as if set forth fully herein.

55. Defendants have engaged in an abnormally dangerous activity by transporting oil and liquid petroleum through the Pipeline. Defendants' activities resulted in the intentional, incidental or accidental oil spill which (a) created a high degree of risk of harm to others, and particularly Plaintiffs and all others similarly situated; (b) created a risk involving a likelihood that the harm threatened by Defendants' activities would be great; (c) created a risk of harm that could not be avoided by the exercise of reasonable care; (d) were not a matter of common usage; (e) were inappropriate to the place that they were being carried on, in that they constituted a non-natural use of waters, which imposed an unusual and extraordinary risk of harm to Plaintiffs and all others.

56. Defendants knew, or should have known, of the high degree of risk attendant with transporting the oil and liquid petroleum.

57. Defendants knew, or should have known, that the transporting of oil and liquid petroleum could threaten property damage and harm the waterways, air and land.

58. Defendants are liable for all damages and injuries resulting from their abnormally dangerous activities.

59. Plaintiffs and all others similarly situated have been damaged by Defendants' abnormally dangerous activities.

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment in its favor of Plaintiffs and those similarly situated and against Defendants and award to Plaintiffs and all those similarly situated:

A. Actual Damages;

B. Exemplary Damages;

C. An order compelling Defendants to immediately and continuously take all necessary and appropriate actions as follows:
   a. Remediation of all water, air and land impacted by the oil spill and the release of oil, toxic and non-toxic substances; and
   b. Perform all necessary environmental testing of water, air and land to ensure the existence safe and sound conditions presently and in the future.

D. All other relief this Court deems just and appropriate, including but not limited to, all costs and attorneys' fees associated with bringing this action and interest from the date of the filing of this Complaint until the date of judgment at the statutory rate.

## COUNT VI – INJUNCTIVE RELIEF

60. Plaintiffs reallege paragraphs 1 through 59 as if set forth fully herein.

61. Plaintiffs and all others similarly situated have suffered and are continuing to suffer significant harm as a result of the Defendants' actions.

62. Plaintiffs are at risk of immediate and irreparable harm requiring Defendants to take all measures necessary, now, and in the future, to cleanup, restore and remediate the waterways, drinking water, air and land to conditions as they existed prior to the oil spill on July 26, 2010.

63. Plaintiffs further demand Defendants to provide the means, now and in the future, for appropriate testing of all waterways, drinking water, air and land to ensure the safe and sound condition for the use, consumption and enjoyment of Plaintiffs and all others similarly situated.

64. The Plaintiffs and all others similarly situated are at significant risk as a result of the Defendants' actions. The interests of public safety, health and welfare outweigh any alleged prejudice to Defendants in granting the relief requested.

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment in its favor of Plaintiffs and those similarly situated and against Defendants and award to Plaintiffs and all those similarly situated:

- A.  Actual Damages;
- B.  Exemplary Damages;
- C.  An order compelling Defendants to immediately and continuously take all necessary and appropriate actions as follows:
    - a. Remediation of all water, air and land impacted by the oil spill and the release of oil, toxic and non-toxic substances; and
    - b. Perform all necessary environmental testing of water, air and land to ensure the existence safe and sound conditions presently and in the future.
- D.  All other relief this Court deems just and appropriate, including but not limited to, all costs and attorneys' fees associated with bringing this action and interest from the date of the filing of this Complaint until the date of judgment at the statutory rate.

## COUNT VII – NEGLIGENCE PER SE

65. Plaintiffs reallege paragraphs 1 through 64 as if set forth fully herein.

66. Defendants' conduct with regard to the transport of oil through the Pipeline is governed by numerous state and federal laws and permits issued under the authority of these laws.

67. These laws and permits create statutory standards that are intended to protect and benefit Plaintiff and all others similarly situated.

68. Defendants' violations of these laws and statutory standards constitute negligence per se.

69. Defendants' violations of these statutory standards proximately caused injuries to Plaintiffs and all others, warranting compensatory and exemplary damages.

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment in its favor of Plaintiffs and those similarly situated and against Defendants and award to Plaintiffs and all those similarly situated:

- A. Actual Damages;
- B. Exemplary Damages;
- C. An order compelling Defendants to immediately and continuously take all necessary and appropriate actions as follows:
    - a. Remediation of all water, air and land impacted by the oil spill and the release of oil, toxic and non-toxic substances; and
    - b. Perform all necessary environmental testing of water, air and land to ensure the existence safe and sound conditions presently and in the future.
- D. All other relief this Court deems just and appropriate, including but not limited to, all costs and attorneys' fees associated with bringing this action and interest from the date of the filing of this Complaint until the date of judgment at the statutory rate.

Respectfully submitted,

HERTZ SCHRAM PC

By: _____
PATRICIA STAMLER (P35905)
ELIZABETH C. THOMSON (P53579)
Attorneys for Plaintiffs
1760 South Telegraph, Ste. 300
Bloomfield Hills, MI 48302
248-335-5000


MACUGA, LIDDLE & DUBIN PC

By: _____
STEVEN LIDDLE (P45110)
DAVID DUBIN (P52521)
Attorneys for Plaintiffs
975 E. Jefferson Ave.
Detroit, MI 48207
(313) 392-0015

Dated: July 30, 2010

16