UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRECIOUS HOLDER *et al.*,

      Plaintiffs,                         Case No. 1:10-cv-00752

v.                                       Hon. Gordon J. Quist

ENBRIDGE ENERGY,
LIMITED PARTNERSHIP, *et al.*,        **ORAL ARGUMENT**
                                          **REQUESTED**

      Defendants.

_____/

## <u>DEFENDANTS' MOTION FOR PARTIAL DISMISSAL PURSUANT TO RULE 12(B)(6)</u>

Defendants, through their counsel, Dickinson Wright PLLC, move pursuant to FED. R. CIV. P. 12(b)(6) for dismissal of the following counts and requests for relief:  Trespass (Count III); Strict Liability (Count IV); Negligence Per Se (Count VI); and request for "exemplary damages."  In support of their motion, Defendants rely upon the facts, argument, and authority set forth in the accompanying brief.

Defendants sought concurrence in the relief requested by this motion, which has not been forthcoming.  Therefore, it is necessary to bring this motion for hearing.

WHEREFORE, Defendants respectfully request that this Court grant their motion for partial dismissal and enter an order dismissing Counts III, IV, and VI, as well as Plaintiffs' request for exemplary damages.

                        Respectfully submitted,

                        DICKINSON WRIGHT PLLC

                        By: /s/ Kathleen A. Lang
                              Edward H. Pappas (P23224)
                              Kathleen A. Lang (P34695)

500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500
E-mail: klang@dickinsonwright.com

Geoffrey A. Fields (P41788)
200 Ottawa Avenue, N.W., Suite 1000
Grand Rapids, MI 49503
(616) 458-1300

*Attorneys for Defendants*

Date:   November 1, 2010

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRECIOUS HOLDER *et al.*,

        Plaintiffs,                                Case No. 1:10-cv-00752

v.                                            Hon. Gordon J. Quist

ENBRIDGE ENERGY,
LIMITED PARTNERSHIP, *et al.*,

        Defendants.

_____/

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR
<u>PARTIAL DISMISSAL PURSUANT TO RULE 12(B)(6)</u>**


**<u>ORAL ARGUMENT REQUESTED</u>**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT......................................................................................ii

I.     INTRODUCTION AND FACTUAL BACKGROUND..................................................1

II.    ARGUMENT..............................................................................................................3

     A.    Standard of Review.........................................................................................3

     B.    Plaintiffs Have Failed to State a Valid Claim for Trespass ...............................4

          1.    An Accidental Leak of Petroleum Cannot Give Rise to a Trespass ........4

          2.    Moreover, Plaintiffs' Trespass Claim Based on "Odors" Fails to State A Claim Upon Which Relief Can Be Granted................................7

     C.    Plaintiffs Have Failed to State a Valid Claim for Strict Liability........................8

          1.    The Question of Whether an Activity is Abnormally Dangerous is a Matter of Law for the Court...................................................................8

          2.    Under Michigan Law, the Maintenance of an Oil Pipeline Does Not Constitute an Abnormally Dangerous Activity....................................9

     D.    Plaintiffs Have Failed to State a Claim for "Negligence Per Se" ......................12

          1.    Plaintiffs Cannot Maintain an Independent Cause of Action for Negligence Per Se...............................................................................12

          2.    Plaintiffs Have Failed To Properly Plead Negligence Per Se in Any Event ...............................................................................................14

     E.    Plaintiffs Have Failed to State a Valid Claim for Exemplary Damages.............14

III.   CONCLUSION........................................................................................................16

# TABLE OF CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

**Cases**

*Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 602 N.W.2d 215 (1999) ...................... 7

*Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987) ................................... 10

*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009) .............................................. 3

*Avemco Ins. Co. v. Rooto Corp.*, 967 F.2d 1105 (6th Cir. 1992).................................... 10

*Bagley Acquisition Corp. v. Homrich Wrecking, Inc.*, Case Nos. 279681 and 281037, 2009 Mich. App. LEXIS 374 (Feb. 19, 2009) .................................................. 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ........................ 3, 4, 14, 15

*Berardo v. Emro Mktg. Co.*, Case No. 94-CV-74606-DT, 1998 U.S. Dist. LEXIS 4179 (E.D. Mich. Feb. 19, 1998) .................................................................. 5

*Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516 (6th Cir. 2008) ........................... 3, 6

*Candelaria v. BC General Contractors, Inc.*, 236 Mich. App. 67, 600 N.W.2d 348 (1999) ....... 12

*Cantrell v. Marathon Ashland Pipe Line, LLC,* No. 03-298-KF, 2005 U.S. Dist. LEXIS 45192 (E.D. Ky. 2005)......................................................................... 11

*Church Mut. Ins. Co. v. Consumers Energy Co.*, Case No. 240571, 2003 Mich. App. LEXIS 2801 (Oct. 30, 2003)............................................................... 7

*Churella v. Pioneer State Mut. Ins. Co.*, 258 Mich. App. 260, 671 N.W.2d 125 (2003) .............. 6

*Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007) ............................. 3

*Cloverleaf Car Co. v. Hambley*, 213 Mich. App. 186, 540 N.W.2d 297 (1995)................... 5, 6, 7

*Doe v. Johnson*, 817 F. Supp. 1382 (W.D. Mich. 1993)................................................. 9

*Ergon Inc. v. Amoco Oil Company*, 966 F. Supp. 577 (W.D. Tenn. 1997) ................................ 11

*Forest City Enter., Inc. v. Nationwide Ins. Co.*, 228 Mich. App. 57, 577 N.W.2d 150 (1998) ...................................................................................... 5, 6

*Hadfield v. Oakland Co. Drain Comm'r*, 430 Mich. 139, 422 N.W.2d 205 (1988) *overruled on other grounds by Pohutski v. City of Allen Park*, 465 Mich. 675, 641 N.W.2d 219 (2002) ............................................................................ 4

*Helber v. City of Ann Arbor*, Case Nos. 247700-3, 2004 Mich. App. LEXIS 2884 (Oct. 26, 2004) .......................................................................................... 6, 7

*Kewin v. Massachusetts,* 409 Mich. 401, 295 N.W.2d 50 (1980) ................................................ 15

*Kosters v. Seven-Up Co.*, 595 F.2d 347 (6th Cir. 1979) .................................................................. 9

*League of United Latin American Citizens v. Bredesen*, 500 F.3d 523 (6th Cir. 2007) ................ 3

*Lozar et. al. v. Birds Eye Foods*, 678 F. Supp. 2d 589 (W.D. Mich. 2009).................................. 13

*Maiden v. Rozwood*, 461 Mich. 109, 597 N.W.2d 817 (1999) ........................................................ 6

*Melso v. Sun Pipe Line Company*, 394 Pa. Super. 578, 576 A.2d 999 (Pa. Super. 1990) ............ 11

*Quiroz v. Seventh Avenue Center*, 140 Cal. App. 4th 1256 (Ct. App. Cal. 2006) ........................ 13

*Ramik v. Darling Int'l, Inc.*, 60 F. Supp. 2d 680 (E.D. Mich. 1999) ............................................. 8

*Terlecki v. Stewart*, 278 Mich. App. 644, 754 N.W.2d 899 (2008)............................................ 5, 7

*Veselenak v. Smith,* 414 Mich. 567, 327 N.W.2d 261 (1982)........................................................ 15

*Williams v. Detroit Edison Co.*, 63 Mich. App. 559, 234 N.W.2d 702 (1975)........................ 9, 10

*Zeni v. Anderson*, 397 Mich. 117, 243 N.W.2d 270 (1976)..................................................... 12, 13

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 3, 6

MCR 2.116(C)(8)............................................................................................................................. 6

**Treatises**

Prosser & Keeton, Torts (5th ed.), § 13 ......................................................................................... 5

## I. INTRODUCTION AND FACTUAL BACKGROUND

This case is one of several nearly-identical lawsuits filed within weeks of an oil pipeline leak in or near Marshall, Michigan against Defendants Enbridge Energy, Limited Partnership, Enbridge Pipelines (Lakehead) L.L.C., and Enbridge Pipelines (Wisconsin) Inc. (collectively, "Enbridge"), advancing numerous legal claims, and seeking an assortment of relief allegedly arising out of the oil pipeline leak. (*See* First Amend. Compl., Dkt. No. 15).

Specifically, on or about July 26, 2010, Enbridge reported a leak in its Line 6B, which runs through the State of Michigan. Upon learning of the Line 6B leak, Enbridge immediately began taking remedial measures to limit the impact, including working with federal, state, and local officials to not only identify, contain, and repair the pipeline, but also commencing the clean-up and remediation of the area, as well as addressing the concerns and immediate needs of individual homeowners and residents. This effort involved not only federal, state and local governmental personnel, but hundreds of Enbridge employees and contractors to contain and clean-up the oil spill, which has been continuous and successful in limiting the effects of the incident and addressing the impact to individual homeowners and other residents.

In the midst of this massive clean-up and remediation effort, multiple lawsuits and class actions were filed in a variety of courts, all seeking to represent similar, if not identical, groups of plaintiffs. However, many of the claims asserted in this and other lawsuits are not legally sustainable and are subject to immediate dismissal.

In Count I, Plaintiffs allege that Enbridge caused the Line 6B leak, which in turn created a nuisance to Plaintiffs' safety, peace, comfort, and convenience. (First Amend. Compl., ¶¶ 35-43). Count II alleges that Enbridge breached its duty to operate and maintain Line 6B with due care, which harmed Plaintiffs and other natural resources. (*Id*., ¶¶ 44-53). In Count III, Plaintiffs allege that Enbridge trespassed on Plaintiffs' properties by allowing oil to spill into the

surrounding waterways. (*Id.*, ¶¶ 54-58). Count IV alleges that Enbridge is strictly liable to Plaintiffs for the Line 6B leak because, according to Plaintiffs, the leak was a result of Enbridge engaging in an abnormally dangerous activity by owning and operating Line 6B. (*Id.*, ¶¶ 59-64). Count V requests injunctive relief. (*Id.*, ¶¶ 65-69). Count VI alleges that Enbridge's alleged violation of state and federal statutory law gives rise to a claim for negligence per se. (*Id.*, ¶¶ 70-74). Finally, Plaintiffs claim—without support—that they are entitled to exemplary damages. (*Id.*, pp. 9, 11, 12, 14, 15, and 16).

Three of these claims (Counts III - Trespass, IV – Strict Liability, and VI – Negligence Per Se) against Enbridge can and should be dismissed by this Court for failure to state a claim on which relief can be granted, as should the request for exemplary damages.

First, even if Plaintiffs could show an intrusion onto their properties as a result of the Line 6B leak, they cannot maintain a claim for trespass, as they have not alleged any facts to show that Enbridge *intended* that intrusion. Second, Plaintiffs cannot maintain an action for strict liability, because they simply cannot establish that operating an oil pipeline constitutes, as a matter of law, an abnormally dangerous activity from which the alleged harm cannot be eliminated by the exercise of reasonable care. Nor can Plaintiffs legitimately claim that Enbridge is liable to them under a theory of negligence per se, for two reasons: (1) negligence per se is not an independent cause of action; and (2) even if it were an independent cause of action, Plaintiffs have failed to allege what statutory mandate Enbridge actually violated. Finally, as to the relief requested, Plaintiffs' bare request for exemplary damages fails to plead *any* facts that would warrant an award of exemplary damages, such as that Enbridge acted willfully or that Plaintiffs suffered any humiliation, sense of outrage, or indignity. As such, Plaintiffs' request for exemplary damages must also be dismissed.

For these reasons, and as further discussed below, the Court should dismiss under FED. R. CIV. P. 12(B)(6) Plaintiffs' claims for trespass, strict liability, negligence per se, and request for exemplary damages.

## II.    ARGUMENT

### A.    Standard of Review

Pursuant to FED. R. CIV. P. 12(b)(6), a party may move to dismiss a case when a plaintiff has failed "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In ruling on a motion to dismiss, the Court "must construe the complaint in a light most favorable to [the] plaintiffs" and "accept all well-pled factual allegations as true."  *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).  "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory."  *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 528 (6th Cir. 2007).  "[A] complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient."  *Bishop*, 520 F.3d at 519.  "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, . . . a plaintiff's obligations to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (emphasis added).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 570). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) ("[E]ven though a complaint need not contain 'detailed' factual allegations, its '[f]actual

allegations must be enough to raise a right to relief above the speculative level.'") (citing *Twombly*, 550 U.S. at 555).[1]

Under these standards, Enbridge is entitled to dismissal of some of the claims asserted and damages requested.

### B.    Plaintiffs Have Failed to State a Valid Claim for Trespass

#### 1.    An Accidental Leak of Petroleum Cannot Give Rise to a Trespass

Plaintiffs' cause of action for trespass should be dismissed because, under Michigan law, the accidental leak of petroleum products cannot give rise to a trespass. Count III of Plaintiffs' complaint asserts that Enbridge "allowed" the release of oil which then settled on their property. (First Amend. Compl., ¶ 55). In describing Enbridge's roll in the release, Plaintiffs allege that Enbridge "failed to exercise due care in their care, maintenance, monitoring and repair of the Pipeline so as to prevent oil leaks." (*Id.*, ¶ 28). Even assuming that these allegations are true, a trespass claim cannot afford Plaintiffs relief because they have failed to allege that Enbridge *intended* to intrude on their property.

Trespass is an intentional tort involving the "invasion of the plaintiff's interest in the exclusive possession of his land." *Hadfield v. Oakland Co. Drain Comm'r*, 430 Mich. 139, 151, 422 N.W.2d 205 (1988) *overruled on other grounds by Pohutski v. City of Allen Park*, 465 Mich. 675, 641 N.W.2d 219 (2002). Under Michigan law, "the actor must intend to intrude on the property of another . . . . If the intrusion was due to an accident caused by negligence or an

---

[1] The Sixth Circuit in *Cleveland Fire Fighters* further observed how the *Twombly* Court had "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (recognizing 'the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief') characterizing that rule as one 'best forgotten as an incomplete, negative gloss on an accepted pleading standard.'" *Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 563).

abnormally dangerous condition, an action for trespass is not proper." *Cloverleaf Car Co. v. Hambley*, 213 Mich. App. 186, 195, 540 N.W.2d 297 (1995) (citing Prosser & Keeton, Torts (5th ed.), § 13, pp. 73-74); *accord Terlecki v. Stewart*, 278 Mich. App. 644, 653-54, 754 N.W.2d 899 (2008); *see also Bagley Acquisition Corp. v. Homrich Wrecking, Inc.*, Case Nos. 279681 and 281037, 2009 Mich. App. LEXIS 374, at *12 (Feb. 19, 2009) (affirming summary disposition because the plaintiff could not "show that any alleged trespass -- and not merely the act resulting in the intrusion -- was itself intentional").

Under circumstances starkly similar to those alleged in this action, the *Cloverleaf* court affirmed dismissal of the plaintiff's trespass claim under MCR 2.116(C)(8) – failure to state a claim on which relief can be granted. There, the plaintiff owned property across the street from the defendant's gasoline station. The plaintiff alleged that the defendant's underground gasoline tanks leaked, and that the leak contaminated the plaintiff's property. The trial court dismissed the plaintiff's trespass claim and the *Cloverleaf* court affirmed, explaining that "[a]lthough plaintiffs allege that [the defendant] caused the gasoline to spill into the ground water, they did not claim that [the defendant] intended this intrusion." 213 Mich. App. at 195.

In another materially indistinguishable case involving a petroleum product leak, *Forest City Enter., Inc. v. Nationwide Ins. Co.*, 228 Mich. App. 57, 577 N.W.2d 150 (1998), the plaintiff alleged that the defendant spilled 2,250 gallons of gasoline which then migrated onto the plaintiff's property. The court affirmed dismissal of the plaintiff's trespass claim because *Cloverleaf* "expressly rejected a claim that an accidental gasoline spill could constitute a trespass." *Id.* at 78; *see also Berardo v. Emro Mktg. Co.*, Case No. 94-CV-74606-DT, 1998 U.S. Dist. LEXIS 4179, at *11 n.5 (E.D. Mich. Feb. 19, 1998) (granting summary judgment on other grounds, but stating that the plaintiff's trespass claim arising from the defendant's gasoline spill

also would have failed because "there is no evidence of record to establish that there was an intentional intrusion").

Similarly, in *Helber v. City of Ann Arbor*, Case Nos. 247700-3, 2004 Mich. App. LEXIS 2884 (Oct. 26, 2004), the plaintiffs brought a trespass claim against the city after their basements flooded with water and sewage. The plaintiffs alleged that the city "improperly constructed and/or engineered and/or maintained the sewerage system that flooded into plaintiff's basement" and that the city "'intentionally caused the accumulation of water and sewage' by operating its sewerage system." *Id.* at *6-7. The trial court dismissed the plaintiffs' trespass claim and the Michigan Court of Appeals affirmed, holding that the plaintiffs failed to "explain with specificity any action or conduct by the city that constitutes a direct or immediate physical invasion" and further failed to "assert that the city intentionally committed any act that caused the physical invasion." *Id.* (citing *Churella v. Pioneer State Mut. Ins. Co.*, 258 Mich. App. 260, 272, 671 N.W.2d 125 (2003) ("Conclusory statements, unsupported by factual allegations, are insufficient to state a cause of action.")).[2]

The factual basis for Plaintiffs' trespass claim is indistinguishable from the bases of the trespass claims in *Cloverleaf* and *Forest City*: each is based on an accidental leak of a petroleum product. *Cloverleaf* and *Forest City* make clear that such claims are not properly pled as a trespass. Indeed, Plaintiffs' allegation that Enbridge "allowed" the leak is simply insufficient in

---

[2] The *Helber* court applied the same standard of review under MCR 2.116(C)(8) as this Court applies under FED. R. CIV. P. 12(b)(6). *Compare Maiden v. Rozwood*, 461 Mich. 109, 119, 597 N.W.2d 817 (1999) ("All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant.); *with Bishop*, 520 F.3d at 519 (holding that the Court "must construe the complaint in a light most favorable to [the] plaintiffs" and "accept all well-pled factual allegations as true").

light of *Cloverleaf*, which held that an allegation that the defendant "caused" the intrusion is insufficient to state a claim for trespass. 213 Mich. App. at 195.

Plaintiffs have not alleged any intent on the part of Enbridge to cause the leak and intrude on their property. Rather, Plaintiffs' allegations sound in negligence – Enbridge "failed to exercise due care" (First Amend. Compl., ¶ 28) – which is not proper for a trespass action. *See Cloverleaf*, 213 Mich. App. at 195; *Terlecki*, 278 Mich. App. at 653-54. Moreover, as the *Helber* court held, bald assertions of intent – e.g., defendants "intentionally caused" – without factual support are insufficient to state a trespass claim. Thus, Plaintiffs cannot cure their failure to state a trespass claim by asserting a factually unsupported allegation of intent.

Simply stated, Plaintiffs' trespass claim is based on allegations of negligence and thus fails to state a claim under Michigan law. *See also Church Mut. Ins. Co. v. Consumers Energy Co.*, Case No. 240571, 2003 Mich. App. LEXIS 2801, at *22 (Oct. 30, 2003) (affirming summary disposition under MCR 2.116(I)(2) because the plaintiff's allegation of "improper configuration and maintenance of [the defendant's] equipment is more akin to a negligence claim"). Accordingly, Count III should be dismissed.

> **2.** **Moreover, Plaintiffs' Trespass Claim Based on "Odors" Fails to State A Claim Upon Which Relief Can Be Granted**

At a minimum, Plaintiffs' trespass claim should be dismissed to the extent that it is based on a trespass by an odor. Plaintiffs allege, in pertinent part, that "Defendants allowed releases of . . . odors . . . into the . . . air . . . which then entered and settled over" Plaintiffs' property and the "odors . . . interfered with Plaintiffs' interest in the exclusive possession of property." (First Amend. Compl., ¶¶ 56-57).

In *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 602 N.W.2d 215 (1999), the court addressed "whether Michigan recognizes a cause of action in trespass stemming from

7

invasion of . . . intangible agents." *Id.* at 53-54. The plaintiff in *Adams* asserted a trespass claim arising from dust, as well as noise and vibrations, that entered his property from a nearby iron mine. The court rejected the plaintiffs' claim and held that, under Michigan law, a trespass action must involve the intrusion of a "physical, tangible object" and an interference caused by "noise, vibrations, or ambient dust, smoke, soot, or fumes" is not properly remedied by a trespass cause of action. *Id.* at 67. The court held that even "dust," although tangible "in a strict sense," is not a tangible object for purposes of a trespass claim because it "does not occupy the land on which [it] settle[s]." *Id*. at 69; *see also Ramik v. Darling Int'l, Inc.*, 60 F. Supp. 2d 680 (E.D. Mich. 1999) (dismissing the class action plaintiffs' trespass claim under FED. R. CIV. P. 12(b)(6) because the plaintiffs' allegations of a "foul and noxious odor" caused by a rendering plant were "insufficient to ground a claim of trespass").

Because an odor is plainly not a "tangible" object capable of "occupy[ing] the land," Plaintiffs cannot ground their trespass claim on odors resulting from the Line 6B leak, and this portion of their trespass claim should be dismissed.

### C. Plaintiffs Have Failed to State a Valid Claim for Strict Liability

Plaintiffs' claim for strict liability (Count IV) should likewise be dismissed because courts applying Michigan law have consistently refused to extend the doctrine beyond its traditional and clearly-delineated bounds and no Michigan case has extended the abnormally dangerous activity doctrine to the maintenance of an oil pipeline.

#### 1. The Question of Whether an Activity is Abnormally Dangerous is a Matter of Law for the Court

As an initial matter, it is well established that in Michigan "the question of whether an activity is abnormally dangerous is a question of law for the Court." *Doe v. Johnson*, 817 F.

Supp. 1382, 1398 (W.D. Mich. 1993). Accordingly, the Court can decide on a motion to dismiss pursuant to Rule 12(b)(6) whether there is "any conceivable way that [Plaintiffs] can succeed on this claim." *Id.*

> **2. Under Michigan Law, the Maintenance of an Oil Pipeline Does Not Constitute an Abnormally Dangerous Activity**

The severely restricted scope of Michigan's abnormally dangerous activity doctrine is well-established. In *Doe*, for example, the court made clear that Michigan courts have applied the doctrine only in a narrow set of circumstances, observing that "[g]enerally, the Michigan cases imposing strict liability for 'extra-hazardous' or 'inherently dangerous' activity have, for the most part, involved blasting, the collection of a quantity of water in a dangerous location, storage of flammable liquids, and like activities." *Id.* at 1398; *see also Kosters v. Seven-Up Co.*, 595 F.2d 347, 354 (6th Cir. 1979) (same).

Michigan courts have long refused to expand the doctrine beyond these clearly-delineated bounds. In *Williams v. Detroit Edison Co.*, 63 Mich. App. 559, 234 N.W.2d 702 (1975), for example, the Court of Appeals refused to apply the abnormally dangerous activity doctrine to the operation of a high-voltage power line. *Id.* at 572. The court acknowledged that "[t]here can be no question that electricity is a dangerous force," and even that it has "inherently dangerous qualities." *Id.* at 571. Yet it explained that "Michigan has yet to impose the doctrine of strict liability based on an abnormally dangerous or inherently dangerous activity upon an electric power company," and declined to so extend the doctrine's reach. *Id.* at 572. The court chose instead to leave the matter to ordinary negligence law, subjecting the electric company to the "reasonable man" standard of care, rather than to strict liability. *See id.*

Similarly, in *Avemco Ins. Co. v. Rooto Corp.*, 967 F.2d 1105 (6th Cir. 1992), the Sixth Circuit rejected a claim that a party should be subject to strict liability under Michigan law for the escape of hydrochloric and sulfuric acid fumes from storage tanks. *Id*. at 1108. The court observed that neither party had cited "any Michigan law, nor any Sixth Circuit precedent, dealing with damage caused by 'drifting chemicals' . . . or by a chemical cloud or mist causing damages to adjacent personal property." *Id*. The court further noted how the doctrine of strict liability had been traditionally limited to activities posing a "high degree of risk" and a "great likelihood of harm" that cannot be eliminated by the "exercise of reasonable care." *Id*. at 1109 (citing *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir. 1987) (holding that under Louisiana law, drilling for oil was not an ultra-hazardous activity as a matter of law because the risk of harm could be eliminated through the exercise of due care)). Finally, the court observed that the storage of chemicals was "quite common." *Id*.

The analysis in *Williams* and *Avemco* applies with full force here. In Count IV of their Complaint, Plaintiffs allege that Enbridge has "engaged in an abnormally dangerous activity by transporting oil and liquid petroleum through the Pipeline." (First Amend. Compl., ¶ 60). Such an allegation, however, fails to state a valid claim for strict liability. First of all, the notion that Enbridge's activities are "abnormally dangerous" is without foundation and in-fact contrary to Michigan law. No Michigan court has ever concluded that the maintenance of an oil pipeline may be the basis for the imposition of strict liability. To the contrary, courts have continually declined to extend Michigan's abnormally dangerous activity doctrine beyond its traditional bounds. Indeed, the *Williams* and *Avemco* courts expressly refused to extend the abnormally dangerous activity doctrine to the maintenance of

an energy transportation line and the storage of hazardous materials – activities that are closely analogous and certainly no less hazardous than Enbridge's operation of its oil pipeline.

Second, the maintenance of an oil pipeline is not an unusual activity or one involving risks of harm that cannot be eliminated by the exercise of reasonable care. To the contrary, "the transmission on land of . . . petroleum products by pipeline . . . is a common activity in a highly industrialized society such as our own." *See Melso v. Sun Pipe Line Company*, 394 Pa. Super. 578, 587, 576 A.2d 999 (Pa. Super. 1990). *See also Ergon Inc. v. Amoco Oil Company*, 966 F. Supp. 577, 583 (W.D. Tenn. 1997) (observing that gas and petroleum products are "public necessities").

Finally, there is persuasive authority from outside of Michigan rejecting the notion that operation of an oil pipeline is an abnormally dangerous activity which gives rise to a claim for strict liability. *See Ergon*, 966 F. Supp. at 583 ("Amoco correctly submits that the claim of strict liability should be dismissed because storage of petroleum products does not constitute an ultra-hazardous activity."); *Melso*, 394 Pa. Super. at 586-87 ("The court below erred, in our opinion, in determining that the operation of a petroleum pipeline . . . was an abnormally dangerous activity."). *See also Cantrell v. Marathon Ashland Pipe Line, LLC,* No. 03-298-KF, 2005 U.S. Dist. LEXIS 45192, at *7 (E.D. Ky. 2005) (observing that "no Kentucky case has extended strict liability to the transmission of oil through pipelines").

For these reasons, the maintenance of an oil pipeline does not constitute an abnormally dangerous activity. This case should be judged under a negligence standard, not strict liability. Accordingly, Count IV of Plaintiffs' Complaint should be dismissed.

11

**D.      Plaintiffs Have Failed to State a Claim for "Negligence Per Se"**

The Court should also dismiss Plaintiffs' claim for "negligence per se."  *First*, under Michigan law, negligence per se is a burden-shifting doctrine or evidentiary presumption upon which a plaintiff may rely in proving its properly pled negligence claim; it is not an independent cause of action.  *Second*, Plaintiffs have failed to properly allege a basis for a negligence per se theory.

**1.      Plaintiffs Cannot Maintain an Independent Cause of Action for Negligence Per Se**

Count VI of Plaintiffs' First Amended Complaint generally alleges that Enbridge's conduct was "governed by numerous state and federal laws and permits," and that Enbridge's alleged "violations of these laws and statutory standards constitute negligence per se."  (First Amend. Compl.,  ¶¶ 71-74).  Even if these allegations were true, which Enbridge denies, they would do nothing more than entitle Plaintiffs to an evidentiary presumption, for purposes of their ordinary negligence claim (Count II), that Enbridge breached its duty or standard of care.  These allegations do not form an independent cause of action.

Although no Michigan case has specifically addressed a plaintiff's right to assert separate counts for negligence and negligence per se, to do so would be inconsistent with established Michigan case law concerning the proper role of the "negligence per se" theory.  In *Zeni v. Anderson*, 397 Mich. 117, 129, 243 N.W.2d 270 (1976), the Michigan Supreme Court explained how "the real Michigan rule as to the effect of violation of a penal statute in a negligence action is that such violation creates only a prima facie case [or presumption] from which the jury may draw an inference of negligence."  Relying on *Zeni*, the Michigan Court of Appeals in *Candelaria v. BC General Contractors, Inc.*, 236 Mich. App. 67, 82, 600 N.W.2d 348 (1999), expressly held that "Michigan does not subscribe to the doctrine of negligence per se."  Thus, in

Michigan, a defendant's violation of a statute only creates a rebuttable presumption and negligence per se is merely a burden-shifting doctrine or evidentiary presumption on which a plaintiff may rely in proving the first two elements of its negligence claim, i.e., duty and breach. *See Zeni*, 397 Mich. at 128-30.

By treating negligence per se as nothing more than an evidentiary presumption, Michigan courts have at least implicitly recognized that "negligence per se" is not a separate cause of action. Rather, it merely aids a plaintiff in proving its underlying negligence claim. *See Lozar v. Birds Eye Foods, Inc.*, No. 09-cv-10, 2009 U.S. Dist. LEXIS 41958, at *15-16 (W.D. Mich. 2009) (*Lozar I*) (relying on the parties' agreement to enter an order allowing the plaintiffs to file an amended complaint, but which could not include "negligence per se" as an "independent count"); *Lozar et. al. v. Birds Eye Foods*, 678 F. Supp. 2d 589, 597 (W.D. Mich. 2009) (*Lozar II*) ("In the order dismissing the first amended complaint, the court . . . noted four acknowledgments made by the Lozars in their brief opposing the mooted motion to dismiss. First, the Lozars stated that they did not object to the dismissal of count one of the first amended complaint, negligence *per se,* as an independent claim, so long as its allegations and the *per se* theory of liability were still available in support of its negligence claim."); *see also Quiroz v. Seventh Avenue Center*, 140 Cal. App. 4th 1256, 1285 (Ct. App. Cal. 2006) (holding that negligence per se is not an independent cause of action, but rather, an evidentiary presumption that aids a plaintiff in proving its underlying cause of action for negligence).

In the present case, permitting Plaintiffs to plead two separate counts for negligence and negligence per se would be inconsistent with established Michigan case law concerning the proper role of the "negligence per se" theory.  Accordingly, Count VI of Plaintiffs' Complaint

for negligence per se is nothing more than a redundant claim for negligence, and should be dismissed for failure to state a claim under Michigan law.

### 2. Plaintiffs Have Failed To Properly Plead Negligence Per Se in Any Event

Even if the Court were to conclude that Plaintiffs could legitimately bring an independent claim for negligence per se, Plaintiffs have failed to properly plead such a theory. This is because Plaintiffs' First Amended Complaint does not identify the statute or regulation that Enbridge allegedly violated.

Plaintiffs' First Amended Complaint is governed by *Twombly*, 550 U.S. 544, in which the Supreme Court held that a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions," and that "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks omitted). Applying these principles to Plaintiffs' First Amended Complaint, it does nothing more than present a formulaic recitation of the elements of a negligence per se theory, stating only that Enbridge's operation of the oil pipeline is "governed by numerous state and federal laws and permits…[and that] Defendants' violations of these laws and statutory standards constitutes negligence per se." (First Amend. Compl., ¶¶ 71-73). These allegations fail to provide Enbridge with any notice whatsoever of the particular "state and federal laws and permits" that Enbridge has allegedly violated. As such, this count is legally insufficient and subject to dismissal.

### E. Plaintiffs Have Failed to State a Valid Claim for Exemplary Damages

Plaintiffs' request for exemplary damages similarly fails to state a valid claim for relief and should be dismissed. Plaintiffs' bare request appears various times throughout their First Amended Complaint, where they ask this Court to grant, among other relief, "exemplary

damages." (Compl., pp. 9, 11, 12, 14, 15, and 16).  Plaintiffs' bare request for exemplary damages, however, is insufficient to state a valid claim for such damages under Michigan law.

Under Michigan law, "exemplary damages are recoverable as compensation to the plaintiff, not as punishment to the defendant."  *Kewin v. Massachusetts,* 409 Mich. 401, 419, 295 N.W.2d 50 (1980).  Specifically, exemplary damages are designed to compensate the plaintiff for the "humiliation, sense of outrage, and indignity" attributable to the defendant's malicious, willful, and wanton conduct.  *Id.*  Thus, in order for a plaintiff to recover exemplary damages, the defendant's "conduct must be malicious or so willful and wanton as to demonstrate a reckless disregard of plaintiff's rights."  *Veselenak v. Smith,* 414 Mich. 567, 573, 327 N.W.2d 261 (1982). Courts have found conduct sufficient to award exemplary damages "in the context of the intentional torts, slander, deceit, seduction, and other intentional (but malicious) acts."  *Id.*  Due to the *intentional* nature of the mental element requirement, "negligence is not sufficient to justify an award of exemplary damages."  *Id.*

As Plaintiffs' claims sound in negligence, there is no basis for an award of exemplary damages.  Plaintiffs have failed to plead *any* facts to justify their request for exemplary damages under Michigan law.  Not only do Plaintiffs fail to plead that the Enbridge defendants acted willfully, but Plaintiffs' bare request for exemplary damages fails to plead *any* facts that would warrant an award of exemplary damages.  Simply concluding a request for relief with a bare, unsupported, and formulaic request for exemplary damages, is insufficient to state a claim for exemplary damages under Michigan law.  *See also Twombly*, 550 U.S. at 555.  Therefore, Plaintiffs' request for exemplary damages should be dismissed.

### III.     <u>CONCLUSION</u>

For all of these reasons, Defendants respectfully request that the Court grant their motion for partial dismissal and enter an order dismissing Counts III (Trespass), IV (Strict Liability), and VI (Negligence Per Se), as well as Plaintiffs' request for exemplary damages.

Respectfully submitted,

DICKINSON WRIGHT PLLC


By:    /s/  Kathleen A. Lang
      Edward H. Pappas (P23224)
      Kathleen A. Lang (P34695)
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
E-mail: klang@dickinsonwright.com

Geoffrey A. Fields (P41788)
200 Ottawa Avenue, N.W., Suite 1000
Grand Rapids, MI 49503
(616) 458-1300

*Attorneys for Defendants*

Dated: November 1, 2010

> I hereby certify that on November 1, 2010, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to: **Patricia Stamler and Elizabeth C. Thomson.**
>
> s/Kathleen A. Lang (P23224)
> DICKINSON WRIGHT PLLC
> 500 Woodward Avenue, Suite 4000
> Detroit, MI 48226
> (313) 223-3500
> klang@dickinsonwright.com

DETROIT 40856-5 1178779v7